**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KEITH L. STUBBLEFIELD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:17-CV-00102-ERW |
| | ) | |
| TROY STEELE, | ) | |
| | ) | |
| Respondent(s). | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Petitioner Keith Stubblefield's Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [17].

## I. BACKGROUND

In 2013, Petitioner Keith Stubblefield ("Petitioner") was convicted, after a bench trial, of one count of Murder in the First Degree and one count of Armed Criminal Action. St. Louis County Cir. Ct., 21st Judicial Cir., Mo. Case No. 11SL-CR00319-01. Petitioner was sentenced to life without the possibility of parole on Count 1 of Murder, and life on Count 2 of Armed Criminal Action, to run concurrently. Tr. pg. 128: 9-21.[1] Petitioner appealed his convictions to the Missouri Court of Appeals, Eastern District, and his convictions were confirmed. ECF No. 35-5. Petitioner subsequently filed a post-conviction relief ("PCR") motion pursuant to Missouri Supreme Court Rule 29.15, which was denied by the PCR Motion Court and affirmed by the Missouri Court of Appeals. ECF No. 35-9.

The Missouri Court of Appeals, Eastern District, described Petitioner's convictions as follows:

---

[1] Tr. refers to the trial transcript, filed at ECF No. 35-1.

1

"Defendant and his girlfriend, Brandis McCollier (Victim), lived together in an apartment. On January 17, 2011, they had friends Tamara McGill (McGill) and Duane Wilderness (Wilderness) over to their apartment as guests. Around 2:00 a.m., the four of them were sitting at a table in the front room, and Defendant and Victim began arguing. At some point, they moved into the kitchen and the argument escalated. Victim came out of the kitchen and sat down at the computer. Defendant came out and they started arguing again, and Defendant sat on the couch.

Defendant and Victim continued arguing. Defendant got up, pulled a gun out of his pants, set it on an ironing board, and put Victim in a choke-hold. Victim "beat him up" and Defendant fell on the ground. Victim stood over him and said, "Don't you put your hands on me no more." Victim went back to sit at the computer and picked up her phone to call the police, but she hung up after Defendant told her that they would both be "locked up" if the police came. Victim called her sister instead. Victim was holding her and Defendant's one-year-old daughter.

Defendant then told Wilderness he needed to leave, and Defendant asked McGill for a ride. McGill asked Victim if she could use Victim's car to drive Wilderness and Defendant, and Victim said McGill could give Wilderness a ride in Victim's car but not Defendant. Then Defendant said to McGill, "[G]et me out of here. Something bad going to happen." Defendant then moved toward the back door of the apartment as if to leave. McGill and Wilderness both turned away, then they heard a gunshot. They saw Victim fall to the floor. McGill testified Victim fell on top of her daughter, whom Victim had been holding. McGill got on the floor, and Defendant looked at her and said, "[McGill], you ready to die too?" Wilderness picked Victim up; Victim was not moving. Wilderness walked outside with Defendant, Defendant looked around, and "took off." Wilderness called 911. The St. Louis County Medical examiner confirmed Victim died of a single gunshot wound to her head."

ECF No. 35-5 at pgs. 1-3.[2]

## II. STANDARD

"A state prisoner who believes that he is incarcerated in violation of the Constitution or laws of the United States may file a petition for writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254." *Osborne v. Purkett*, 411 F.3d 911, 914 (8th Cir. 2005). In order for a federal

---

[2] These facts are taken directly from the Court of Appeals' opinion affirming Petitioner's conviction on direct appeal. A state court's determination of a factual issue shall be presumed to be correct. 28 U.S.C. §2254(e).

court to grant an application for a writ of habeas corpus brought by a person in custody by order of a state court, the petitioner must show that the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. *Id.* at § 2254(e)(1).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Johnson*, 532 U.S. 782, 792 (2001) citing (*Williams v. Taylor*, 529 U.S. 362, 405–406 (2000)). An unreasonable application of clearly established Supreme Court precedent is found where the state court identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *Ryan v. Clark*, 387 F.3d 785, 790 (8th Cir. 2004). Finally, a state court decision may be considered an unreasonable determination of the facts "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Id.*

## III. DISCUSSION

Petitioner makes thirty-one (31) claims in his petition, as amended. They are as follows:

(1) The Missouri Constitution's right to bear arms should have afforded him a defense; the shooting was accidental. ECF No. 17 at pgs. 38-41;

3

(2) Trial counsel was ineffective when his advice led Petitioner to reject two plea offers. ECF No. 17 at pg. 42;

(3) Trial counsel was ineffective when he told Petitioner he discussed the entire case with the trial judge, who allegedly admitted he knew the shooting was unintentional and a mistake. Further, counsel informed Petitioner the trial judge allegedly told him he would not convict Petitioner of first degree murder. This allegedly led Petitioner to waive his right to a jury trial based on fraudulent representations. ECF No. 17 at pgs. 43-44;

(4) Trial counsel was ineffective for refusing to allow Petitioner to testify on his own behalf. ECF No. 17 at pgs. 44-46;

(5) Trial counsel was ineffective for withholding the deposition of third party witnesses supporting Petitioner's assertion the shooting was an accident. ECF No. 17 at pg. 46;

(6) Trial counsel was ineffective for withholding the depositions of the two witnesses interrogated by homicide detectives supporting Petitioner's story. ECF No. 17 at pg. 46;

(7) Trial counsel was ineffective for failing to call Petitioner's family to support Petitioner's assertion he only left the unit to ensure he could safely make contact with homicide detectives. ECF No. 17 at pg. 46;

(8) Trial counsel was ineffective when he failed to cross examine both state witnesses with the original drawing of the apartment. ECF No. 17 at pg. 47;

(9) Trial counsel was ineffective in failing to present evidence of the dangers and legitimate fears Petitioner and the victim faced living in the apartment and being previously burglarized. ECF No. 17 at pg. 47;

(10) Trial counsel was ineffective for failing to introduce phone records of the victim's 911 call reporting "hoodlums or thugs" who appeared at the rear door of the apartment. ECF No. 17 at pg. 48;

(11) Trial counsel was ineffective for failing to present evidence showing several of the gang members referenced in the 911 call later broke into the apartment and were apprehended by police. ECF No. 17 at pg.48;

(12) Trial counsel was ineffective for failing to argue the affirmative defense the shooting was accidental. ECF No. 17 at pg. 48-49;

(13) Trial counsel was ineffective for failing to object to the removal of Petitioner's depositions from evidence. ECF No. 17 at pgs. 48-49;

(14) Trial counsel was ineffective for failing to show the trial court Petitioner's business license. ECF No. 17 at pg. 49;

(15) Trial counsel was ineffective for failing to call Mr. and Mrs. Rucker to testify they saw him changing the oil in the victim's vehicle and that Petitioner spent most of the morning buying paint supplies. ECF No. 17 at pg. 49;

(16) Trial counsel was ineffective for failing to call Gail Williams at trial, who would have testified she paid Petitioner $450.00 on January 15, 2011, so there was no reason for the Petitioner to have an argument with the victim over money. ECF No. 17 at pg. 49;

(17) Trial counsel was ineffective for failing to impeach Tamara McGill with her original statements at trial regarding where she was standing and the subject of the argument in the apartment. ECF No. 17 at pg. 50;

(18) Trial counsel was ineffective for withholding evidence that Duane Wilderness was with Petitioner and the victim earlier in the day before the shooting. ECF No. 17 at pg. 50;

(19) Direct appeal counsel was ineffective for failing to challenge the trial transcripts. Petitioner alleges the trial transcripts removed Petitioner's trial counsel's inducement to keep him from testifying from the record. Further, Petitioner alleges the trial transcripts added statements not made at trial during Tamara McGill's testimony. ECF No. 17 at pg. 51-52;

(20) Trial counsel was ineffective for failing to offer evidence of video from news Channel 2 supporting Petitioner's story he was targeted by gang members. ECF No. 17 at pgs. 52-53;

(21) Trial counsel was ineffective for failing to impeach Duane Wilderness with his prior statements using his deposition and police reports. ECF No. 17 at pg. 53;

(22) Trial counsel was ineffective for failing to enter Duane Wilderness's deposition into evidence at trial. ECF No. 17 at pg. 53;

(23) Trial counsel was ineffective for failing to investigate Tamara McGill. ECF No. 17 at pg. 53;

(24) Trial counsel was ineffective for failing to investigate Petitioner's upstairs neighbors regarding crime in the neighborhood. ECF No. 17 at pg. 53;

(25) Trial counsel was ineffective for failing to call Petitioner's landlord at trial to show the victim had requested to move due to break-ins. ECF No. 17 at pg. 53;

(26) Trial counsel was ineffective for failing to present an adequate defense because Petitioner could not pay a monetary fee. ECF No. 17 at pg. 53;

(27) Trial counsel was ineffective for failing to introduce at trial evidence showing there was no altercation between himself and the victim. ECF No. 17 at pg. 54;

(28) Trial counsel was ineffective for failing to object at trial to expert witness testimony which improperly stated the hair type of the victim. ECF No. 17 at pg. 90;

(29) Trial counsel was ineffective for failing to call the homicide detectives who interrogated both witnesses. ECF No. 17 at pg. 90;

(30) Trial counsel was ineffective for failing to present evidence neighbors heard gunshots, supporting Petitioner's narrative the shots came from near the outer door of the home. ECF No. 17 at pg. 90;

(31) PCR counsel was ineffective for failure to attach Petitioner's *pro se* claims to his PCR brief, resulting in prejudice. ECF No. 17 at pgs. 91-112.

The Court will address each claim as follows.

    A. *Defaulted Claims – Claims 1-2; 5-20; 22-25; and 27-30*

Petitioner must raise each claim presented in his federal habeas petition, first, in state court proceedings. *Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir. 2006). Claims not presented in state court proceedings, and for which there is no remaining state court remedy, are defaulted. *Id.* To overcome a procedural default, a petitioner must show cause for not presenting the claim in state court, and prejudice from the failure, or a fundamental miscarriage of justice. *Storey v. Roper*, 603 F.3d 507, 523 (8th Cir. 2010). Cause for a procedural default ordinarily occurs when the petitioner can show "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In order to establish a fundamental miscarriage of justice, a petitioner must present "new reliable evidence that he was innocent of the crime of which he was convicted." *Storey*, 603 F.3d at 524.

Because Petitioner failed to raise Claim 1 on direct appeal and likewise failed to raise Claims 2; 5-20; 22-25; and 27-30 on PCR appeal, as required, the claims are procedurally

defaulted and must be dismissed. The claims would not be dismissed if Petitioner could show cause and prejudice for not presenting claims in state court or if he can show existence of a fundamental miscarriage of justice. Further, a claim of ineffective assistance of counsel, if used to establish cause and prejudice, must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. *Wyldes v. Hundley*, 69 F.3d 247, 253 (8th Cir. 1995) citing (*Murray*, 477 U.S. at 489). Petitioner argues, in both his direct appeal and PCR appeal, his respective counsel were ineffective in their briefing of his claims.[3] Because none of the claims here were presented to the state court as independent claims, they may not be used to establish cause for a procedural default. Furthermore, Petitioner makes no argument regarding a fundamental miscarriage of justice beyond bare assertions that if not for counsel's mistakes, he would have won at trial. Because Petitioner failed to raise these twenty six (26) claims in state court, as required, and he has not shown cause and prejudice or a fundamental miscarriage of justice, the claims are defaulted. Thus, claims 1-2; 5-20; 22-25; 27-30 will be denied.

    B. *Claim 3 – Jury Trial Waiver*

In his third claim, Petitioner contends he was given ineffective assistance of counsel when his trial counsel allegedly told him he should waive his right to a jury trial because the trial judge had told counsel that he knew the shooting was an accident and would not find Petitioner guilty of first degree murder. This claim was raised in both Petitioner's PCR motion and his appeal from denial of his PCR motion. The PCR appellate court affirmed the motion court's denial, finding:

---

[3] ECF No. 17 at pg. 26, ¶ 33 ("In my appeal Process and Post-Conviction Case, both written document's had hidden arguments written to inform but, on closer reading actually favor the States Position over the appellant's or movant's Position being myself [sic].").

. . .we agree with the motion court and find no merit to Movant's claim that counsel pressured him to waive his right to a jury trial. During the evidentiary hearing, counsel testified that Movant made the decision to proceed to a bench trial. Counsel testified that he "thought it was a good idea" because the Judge would likely be more "lenient" than a jury. Moreover, our review of the record at the bench trial shows that the court specifically informed Movant of the consequences of waiving his right to a jury trial. The following colloquy occurred:

> **COURT**: He [counsel] told me that you yourself brought up the issue of jury-waiving this case; is that true?
> **MOVANT**: Yes.
> **COURT**: Now has anyone threatened you – this is including your lawyer – has anyone threatened you, intimidated you, mistreated you or any member of your family, anybody, forced you to give up your right to a jury trial?
> **MOVANT**: No, Sir.
> **COURT**: Do you understand that if you give up your right to trial by jury, I'll hear and decide the case and I'll sentence you if I found – If I find you guilty? Do you understand that?
> **MOVANT**: Yes.
> **COURT**: Do you understand that my verdict or findings will have the same effect as if a jury made the determination as to guilt or innocence?
> **MOVANT**: Yes, Sir.

Movant further acknowledged that he voluntarily signed a form waiving his right to trial by jury. When asked whether he was freely and voluntarily giving up his right to trial by jury, Movant responded, "Yes, Sir."

Likewise, we find no merit in Movant's claim that trial counsel advised him that Judge DePriest would find him guilty of negligent manslaughter rather than first-degree murder if Movant proceeded to a bench trial. At the evidentiary hearing, Movant testified that trial counsel told him, "I thoroughly discussed your case with the Judge. The Judge know[s] that the shooting was unintentional." Movant further testified that trial counsel told him if "you waive the jury trial and we go with the Judge, I guarantee you that he's not going to convict you of Murder One." Trial counsel, however, testified that "the only discussions we had with the Judge was whether [Movant] would do a bench-tried case." Counsel further testified that he never told Movant that the Judge would return a specific verdict. The motion court, again, found trial counsel's testimony credible and we defer to its judgment. Moreover, the court informed Movant that the verdict and sentencing decision would be left solely to the court.

ECF No. 35-9 at pgs. 9-10 (citations omitted).

The PCR motion court correctly applied federal law in denying Petitioner's claim for ineffective assistance of counsel. In order to establish ineffective assistance of counsel, an individual must show counsel made an unreasonable error and the error prejudiced the defense, meaning there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Further, the individual must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id.* at 690 (citation omitted). Petitioner cannot establish his counsel was ineffective or he was prejudiced by ineffective advice regarding Petitioner's waiver of his right to a jury trial. As described by the PCR appellate court, there is simply no evidence to show Petitioner did not voluntary waive his right to trial or the judge in his case discussed the case with Petitioner's attorney. To the contrary, the transcript of the evidentiary hearing held by the PCR trial court shows no factual basis for Petitioner's claim. The state courts' decisions are entitled to deference, because they did not unreasonably apply federal law. Therefore, this claim will be denied.

C. *Claim 4 – Waiver of Right to Testify*

In his fourth claim, Petitioner asserts he was given ineffective assistance of counsel when his trial counsel failed to allow Petitioner to testify on his own behalf, despite Petitioner's insisting he wanted to testify. This claim was raised in both Petitioner's PCR motion and his appeal from denial of his PCR motion. The PCR appellate court affirmed the motion court's denial, finding:

> In this case, the motion court held an evidentiary hearing and determined that Movant did voluntarily and knowingly waive his right to testify. During the evidentiary hearing, Movant testified that trial counsel would not allow him to testify even though counsel "knew I wanted to testify." Movant further stated the shooting was accidental, and he would have testified as follows: Earlier on the day of the Victim's death, Movant and Wilderness had changed the oil in a

vehicle, and Movant did not washed [sic] his hands. Later that evening, Movant thought people were breaking into his vehicle so he got the gun. Because of the oil residue on his hands, the gun accidently went off and killed the Victim.

Trial counsel, however, testified that Movant made the decision not to testify after "we talked about the advantages and disadvantages." Further, trial counsel stated that while he advised Movant not to testify, it was ultimately Movant's decision. The motion court found trial counsel's testimony credible, and we defer to its judgment.

Furthermore, the record from the bench trial supports the motion court determination that "the decision not to testify was made solely by the Movant himself." The following colloquy during the bench trial shows that Movant voluntarily waived his right to testify:

**COURT**: Now you understand in a criminal case you have a right to testify. Do you understand that?
**MOVANT**: Yes.
**COURT**: The fact that you do not testify, I cannot hold anything against you for not testifying. Do you understand that?
**MOVANT**: Yes.
**COURT**: But [counsel] tells me that he's discussed this issue thoroughly with you about testifying or not.
**MOVANT**: Yes.
…
**COURT**: So that if you do not testify, the decision as to your innocence and guilty will be made solely on evidence that has been presented by the State of Missouri. I cannot hold it against you in any fashion or manner that you do not testify. Do you understand that?
**MOVANT**: Yes, sir.
**COURT:** Now knowing this is it still your, your decision, no one else's, that you do not wish to testify in the matter before the court today? This is the one and only chance you will have to do so.
**COURT:** Yes, sir.

Accordingly, we find Movant fails to establish trial counsel was ineffective for failing to allow him to testify. The motion court did not clearly err in denying Movant's claim.

ECF No. 35-9 at pgs. 11-12.

The PCR motion court and the appellate court correctly applied federal law in denying Petitioner's claim for ineffective assistance of counsel. Petitioner cannot establish his counsel was ineffective or he was prejudiced by ineffective advice regarding Petitioner's waiver of his

11

right to testify on his own behalf. As described by the PCR appellate court, there is simply no evidence to show Petitioner did not voluntarily waive his right to testify. To the contrary, the transcript of the evidentiary hearing held by the PCR trial court shows no factual basis for Petitioner's claim. The state courts' decisions are entitled to deference, because they did not unreasonably apply federal law. Therefore, this claim will be denied.

### D. Claim 21 – Failure to Impeach Duane Wilderness at Trial

In his twenty-first claim, Petitioner asserts he was given ineffective assistance of counsel when his trial counsel failed to impeach witness Duane Wilderness at trial. Specifically, Petitioner alleges his trial counsel should have used Wilderness's deposition and police reports to show inconsistency in his trial testimony. This claim was raised in both Petitioner's PCR motion and his appeal from denial of his PCR motion. The PCR appellate court affirmed the motion court's denial, finding:

> Our review of the record supports the motion court's finding that counsel's decision not to impeach Wilderness was sound trial strategy. During the evidentiary hearing, counsel testified that his strategy was not to argue the shooting was accidental or reckless because "any reasonable person would find the oily hand theory incredible," and placing the gun in Movant's hands would only strengthen the State's case. Rather, counsel testified that his strategy was to argue the killing occurred under sudden passion and in the heat of the moment in order to combat the State's theory of cool deliberation and cool reflection. Thus, counsel stated that he did not believe impeaching Wilderness's statements was "important" because it was not relevant to his theory of the crime and "people change their testimony all the time."
>
> Assuming, arguendo, that Movant changed the oil in a vehicle earlier that day and did not wash his hands, it is unlikely the oil residue would have remained on the Movant's hands throughout the day and into the early morning hours. Therefore, even if counsel had impeached Wilderness with his prior statements, we find there is no reasonable probability that the outcome of the trial would have been different. In addition to Wilderness's testimony, the court also heard testimony from McGill who testified to the events leading up to the Victim's death. We find McGill's testimony provided the trial court with sufficient evidence to support Movant's convictions.

ECF No. 35-9 at pg. 14.

The PCR motion court and the appellate court correctly applied federal law in denying Petitioner's claim for ineffective assistance of counsel. Petitioner cannot establish his counsel was ineffective or he was prejudiced by his trial counsel's failure to impeach Duane Wilderness. Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel. *United States v. Orr*, 636 F.3d 944, 952 (8th Cir. 2011) (citation omitted). Further, a failure to impeach constitutes ineffective assistance only when there is a reasonable probability, absent counsel's failure, the jury would have had reasonable doubt of the petitioner's guilt. *Id.* (citation omitted). As observed by the PCR appellate court, trial counsel testified at the evidentiary hearing the decision not to impeach Wilderness was a matter of trial strategy focusing on rebutting the State's argument for the "cool reflection" required for first degree murder. Because the impeachment of Wilderness was immaterial to counsel's sound trial strategy, Petitioner fails to overcome the burden of reasonableness of trial strategy. The state courts' decisions are entitled to deference because they did not unreasonably apply federal law. Therefore, this claim will be denied.

### E. Claim 26 – Inadequate Defense Due to Fee

In his twenty-sixth claim, Petitioner asserts his trial counsel gave him ineffective assistance because Petitioner did not pay counsel's full fee to defend him.[4] This claim was raised in both Petitioners' PCR motion and in his appeal from denial of his PCR motion. The appellate court, in affirming the PCR motion court's denial of Petitioner's claim, held:

> . . .we find movant failed to establish counsel had a financial conflict of interest, which affected his representation. At the evidentiary hearing, trial counsel

---

[4] This claim was asserted in various forms throughout Petitioner's brief, including in conjunction with Petitioner's assertion that he was misled into the decision to waive his right to a jury trial. The Court has addressed this claim separately here in the interest of clarity.

> testified that he charged a flat fee of $10,000 for first-degree murder cases. While Movant's father, Gilliam, had only paid about $8,000, counsel testified he "told [Gilliam] he didn't have to pay the remainder." Counsel testified that the lack of payment did not affect his representation because "that would be unethical," and he never threatened to leave the case if Movant did not continue to pay his legal fees. Here, the motion court found trial counsel's testimony credible and we defer to its determination.

ECF No. 35-9 at pg. 9 (citation omitted).

The PCR motion court and the appellate court correctly applied federal law in denying Petitioner's claim for ineffective assistance of counsel. Petitioner cannot establish his counsel was ineffective or he was prejudiced by a conflict of interest. Prejudice is presumed when counsel is burdened by an actual conflict of interest, when a petitioner demonstrates counsel "actively represented conflicting interests" and "an actual conflict of interest adversely affected his lawyer's performance." *Strickland*, 466 U.S. at 692 citing (*Cuyler v. Sullivan*, 466 U.S. 335, 350, 348 (1980)). As noted by the PCR appellate court, Petitioner failed to pay his trial counsel's entire fee for the first degree murder trial. However, the facts clearly show counsel told Petitioner there was no need to pay the remainder of the fee. Further, Petitioner offers no evidence, beyond mere assertions, his counsel's performance was affected in any way by the lesser fee. The state courts' decisions are entitled to deference because they did not unreasonably apply federal law. Therefore, this claim will be denied.

### F. Claim 31 – Failure to Include Pro Se Claims

In his thirty-first claim, Petitioner asserts his PCR counsel was ineffective for failing to include his *pro se* claims in his amended PCR brief. Further, he claims the failure to have PCR review of said claims constitutes prejudice. The presumption of effective assistance of counsel can generally only be overcome when the issues, which are ignored by counsel, are clearly stronger than those presented. *Link v. Luebbers*, 469 F.3d 1197, 1205 (8th Cir. 2006). Here, there

is no evidence presented to show Petitioner's *pro se* arguments in his Form 40 document were clearly stronger than those presented in his amended PCR brief. This is especially true given that many of Petitioner's arguments here appear to be a mere copy of his Form 40 document, of which all are without merit. Thus, counsel's decision not to include them falls within the wide range of reasonable professional assistance under *Strickland*. As such, this claim will be denied.

## IV. CERTIFICATE OF APPEALABILITY

The Court finds Petitioner has not made a substantial showing of the denial of a constitutional right, as is required before a certificate of appealability can issue. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (explaining that a Asubstantial showing@ is a showing the Aissues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings@). Therefore, the Court shall not issue a certificate of appealability as to any claims raised in Petitioner=s § 2254 Motion.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that Keith Stubblefield's Amended Petition under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* by a Person in State Custody [17] is **DENIED**, as to all counts. Petitioner Keith Stubblefield's Petition is **DISMISSED**, with prejudice. A certificate of appealability will not be issued.

So ordered this 12th day of April**,** 2019.

_____
 E. RICHARD WEBBER
 SENIOR UNITED STATES DISTRICT JUDGE